**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHPOINT RESOURCES CORP., *et al.*,[1] | ) | Case No. 21-10565 (CSS) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) SCHEDULING A COMBINED
DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING,
(II) APPROVING THE SOLICITATION PROCEDURES AND DATES, DEADLINES, AND
NOTICES RELATED THERETO,(III) DIRECTING THAT A MEETING OF CREDITORS
NOT BE CONVENED, (IV) WAIVING THE REQUIREMENT OF FILING STATEMENTS
OF FINANCIAL AFFAIRS AND SCHEDULES OF ASSETS AND LIABILITIES,
AND (V) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion.[2]

**Introduction**

1.      The Debtors propose a swift yet due-process compliant timeline to consummate the

Merger and the restructuring transactions contemplated by the Plan, and maximize the value of

these estates.  The proposed Confirmation Schedule (as defined herein) is appropriate here because

it comports with all applicable rules and notice periods—e.g., the Debtors provided over 30 days'

notice of the proposed Combined Hearing to all known parties in interest.  Additionally, the Plan

has been accepted by more than 99% percent of creditors and equity holders that cast a Ballot.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  HighPoint Resources Corporation (0361); HighPoint Operating Corporation (0545); and Fifth Pocket Production, LLC (8360).  The location of the Debtors' principal place of business is 555 17th Street, Suite 3700 Denver, Colorado 80202.

[2]   A detailed description of the Debtors' businesses, capital structure and the events leading to these chapter 11 cases is set forth in the *Declaration of William M. Crawford in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

This is in addition to Holders of more than 86% of Notes Claims and 46% of the Existing HPR Interests that are parties to the TSA.  The Plan and Disclosure Statement were subject to extensive review and comment by the Debtors' secured lenders, unsecured noteholders, equity holders, and the proposed merger counterparty.  Moreover, the Securities and Exchange Commission completed its review of the Registration Statements, indicated it did not have any further comment, and declared the Registration Statements effective before the Debtors' solicitation launch on February 10, 2021.[3]

2.      The Debtors seek confirmation of the Plan on March 18, 2021, or as soon thereafter as the Court is available.  The Debtors took extensive, extraordinary measures to ensure that all parties in interest have sufficient notice of the proposed Plan, the Objection Deadline, and the Combined Hearing, consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, all in advance of the commencement of these chapter 11 cases.  On February 10, 2021, the Plan and the Disclosure Statement were distributed to Holders of Notes Claims and Holders of Existing HPR Interests (collectively, the "Voting Classes") and posted on the Claim and Noticing Agent's public website:  https://dm.epiq11.com/HighPoint.  Also on February 10, 2021, the Debtors served the Combined Notice, setting forth the Debtors' intention to proceed with confirmation as soon as practicably possible after the Petition Date, to more than 5,000 creditors, equity holders, and interested parties.  The Combined Notice provided notice of the Objection Deadline—i.e., a 29-day period—and provided detailed instructions as to how parties could review and, if necessary, object to the Plan or Disclosure Statement.  On February 16, 2021, the Debtors

---

[3]    On November 9, 2020, the Debtors publicly disclosed a substantially final draft of the Plan via 8-K—more than *four months* before the Petition Date.  On December 17, 2020, the Debtors publicly disclosed a substantially final draft of the Disclosure Statement via the Registration Statements—approximately *three months* before the Petition Date.

published the Combined Notice in *The New York Times* (national edition) and the *Denver Post*. On March 2, 2021, the Debtors served a notice on approximately 5,000 creditors, equity holders and interested parties directing them to review the draft "first-day" pleadings posted to their public restructuring website. The U.S. Trustee had an opportunity to review and comment on such "first-day" pleadings **before** the public posting. On March 4, 2021—seven days before the voting and objection deadlines—the Debtors posted the Plan Supplement to their public restructuring website, serving notice of that Plan Supplement filing to all parties in interest that same day. Creditors, equity holders, and interested parties have been, and will continue to be, provided a full and fair opportunity to participate in these chapter 11 cases.

3. The Plan itself implements a comprehensive restructuring and certain recapitalization transactions, whereby, among other things, Boron Merger Sub Inc. ("Merger Sub"), a wholly owned subsidiary of Bonanza Creek Energy, Inc. ("BCEI"), will merge with and into HighPoint Resources Corporation as contemplated under that certain Agreement and Plan of Merger, dated as of November 9, 2020 (such transaction, the "Merger", and such agreement, the "Merger Agreement"). After giving effect to the Merger and such restructuring transactions, Holders of Allowed Notes Claims will own approximately 30.4 percent in the aggregate, and Holders of Allowed Existing HPR Interests will own approximately 1.6 percent in the aggregate, of BCEI Common Stock on a fully-diluted basis, in each case based on the number of shares of BCEI Common Stock outstanding as of November 9, 2020. Holders of Allowed Notes Claims will also receive their Pro Rata share of $100 million of New Take Back Notes. All other creditors will be unimpaired.

4. The Plan and the Merger Agreement are the product of extensive negotiations with the Debtors' existing stakeholders, including Holders of Notes Claims and Holders of

Existing HPR Interests, and strategic partners, including BCEI as counterparty to the Merger. The restructuring transactions contemplated by the Plan, the Merger Agreement, and the TSA include:

- *Cancellation of Notes Claims and Existing HPR Interests in Exchange for BCEI Common Stock.* Holders of Allowed Notes Claims and Existing HPR Interests will receive their Pro Rata share of 9,804,435 shares of BCEI Common Stock, in accordance with and subject to dilution as permitted by the terms set forth in the Merger Agreement and the Plan. Based on the number of shares of BCEI Common Stock outstanding as of November 9, 2020, Holders of Allowed Notes Claims will receive approximately 30.4 percent of BCEI Common Stock in the aggregate, Holders of Allowed Existing HPR Interests will receive approximately 1.6 percent of BCEI Common Stock in the aggregate, and existing stockholders of BCEI would own approximately 68 percent of BCEI Common Stock;

- *New Take Back Notes.* In addition to BCEI Common Stock, Holders of Allowed Notes Claims will receive their Pro Rata share of $100 million in aggregate principal amount of the New Take Back Notes;

- *Exit RBL Facility.* The capital structure of BCEI following the consummation of the transactions contemplated by the Plan shall include a senior secured credit facility with aggregate available commitments (drawn and undrawn, collectively) of not less than $250 million in principal amount. Allowed RBL Claims are Unimpaired under the Plan; and

- *Operational Claims Unimpaired.* Outstanding and undisputed claims are unimpaired under the Plan.

5. The Plan eliminates approximately $625 million of the Debtors' funded debt and proposes to pay all non-debt claims in full. In so doing, the Plan minimizes any potential adverse effects to the Debtors' businesses as a result of the restructuring, and thus positions the Debtors for a prompt emergence from bankruptcy. It is in the best interests of the estates that the Debtors proceed swiftly to confirmation of the Plan, and to the subsequent consummation of the Merger and emergence from these chapter 11 cases shortly thereafter. A prolonged stay in chapter 11 is not only unnecessary but would result in significant incremental administrative costs. The proposed confirmation timeline—one that respects all normal and required notice periods—is therefore value maximizing. And that schedule, taken together with the Debtors' substantial

prepetition efforts, provides ample notice and opportunity for any interested party to participate in these chapter 11 cases. No parties in interest are prejudiced by the Confirmation Schedule. And importantly, the Plan does not impair any creditors other than the classes that have overwhelmingly voted in favor of the Plan.

6.      Given the extensive support for the Plan and the ample notice provided to all parties in interest, the Debtors submit that the facts and circumstances presented in these chapter 11 cases justify and support the schedule set forth herein. Pursuant to this motion, the Debtors request that the Court schedule the Combined Hearing on March 18, 2021, to consider approval of the Disclosure Statement and confirmation of the Plan. The Notices summarize the material terms of the Plan, including classification and treatment of claims, provide the full text of the releases (as well as procedures applicable to opting out of the Third-Party Release), exculpation, and injunction provisions in the Plan, and the applicable deadlines with respect to cure of defaults for assumed Executory Contracts and Unexpired Leases, and offered multiple methods by which stakeholders could obtain copies of the Plan, Disclosure Statement, and TSA in the format of their choosing. The Ballots likewise include an "opt out box," meaning the Voting Classes were actually served with the means by which they could opt out of the Third-Party Release. Confirming the Plan on the Confirmation Schedule, as well as the other relief requested herein, is in the best interests of the Debtors, their estates, and all stakeholders, and should be approved.

7.      Courts in this district and others have confirmed prepackaged plans on schedules similar to those proposed herein. *See, e.g.*, *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 16, 2019) (confirming prepackaged plan and approving disclosure statement 15 days after petition date); *In re Arsenal Energy Holdings, LLC*, No. 19-10226 (BLS) (Bankr. D. Del. Feb. 13, 2019) (confirming prepackaged plan and approving disclosure statement 9 days after

petition date); *In re Belk, Inc.*, No. 21-30630 (MI) (Bankr. S.D. Tex. Feb. 24, 2021) (confirming prepackaged plan and approving disclosure statement approximately 24 hours after petition date); *In re Mood Media* No. 20-33768 (MI) (Bankr. S.D. Tex. July. 31, 2020) (same); *In re Sheridan Holding Company I*, LLC, No. 20-31884 (DRJ) (Bankr. S.D. Tex. Mar. 23, 2020) (same); *In re Sungard Availability Servs. Cap.* No. 19-22915 (RDD) (Bankr. S.D.N.Y. May. 23, 2019) (same); *In re FullBeauty Brands Corp.* No. 19-22185 (RDD) (Bankr. S.D.N.Y. Feb. 4, 2019) (same); *In re Global A&T Electronics Ltd.* No. 17-23931 (RDD) (Bankr. S.D.N.Y. Dec. 22, 2017) (confirming prepackaged plan and approving disclosure statement 5 days after petition date).

**Relief Requested[4]**

8.    The Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), granting the following relief and such other relief as is just and proper:

    a.    scheduling a combined hearing (the "Combined Hearing") to consider approval of the adequacy of the *Disclosure Statement Relating to the Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") and confirmation of the *Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "Plan") and confirmation of the Plan;

    b.    establishing a deadline for filing objections to the adequacy of the Disclosure Statement and confirmation of the Plan (the "Objection Deadline") and approving related procedures;

    c.    approving the solicitation procedures regarding votes to accept or reject the Plan (the "Solicitation Procedures");

---

[4]    Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the *Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "Plan"), filed contemporaneously herewith.

d.  approving the form and manner of notice of the Combined Hearing (the "Combined Notice"), the form and manner of notice of commencement of the chapter 11 cases (the "Notice of Commencement"), and the form and manner of the publication notice of the Combined Hearing (the "Publication Notice");

e.  waiving the requirements that (i) the United States Trustee for the District of Delaware (the "U.S. Trustee") convene a meeting of creditors (the "Creditors' Meeting") pursuant to section 341(e) of the Bankruptcy Code, and (ii) the Debtors file schedules of assets and liabilities (the "Schedules") and statements of financial affairs ("SOFAs"), in each case, on the condition that the Court confirms the Plan within thirty (30) days of the Petition Date;

f.  approving the following schedule of proposed dates (the "Confirmation Schedule"), subject to the Court's availability:

| Event | Date |
|---|---|
| Voting Record Date[5] | February 1, 2021 |
| Solicitation Launch | February 10, 2021 |
| Service of Combined Notice | February 10, 2021 |
| Voting Deadline | March 11, 2021, at 5:00 p.m., prevailing Eastern Time |
| Objection Deadline | March 11, 2021, at 5:00 p.m., prevailing Eastern Time, or such other date as the Court may direct |
| Petition Date | March 14, 2021 |
| Combined Hearing | March 18, 2021, or such other date as the Court may direct |

## Background

9.  HighPoint Resources Corporation, together with its Debtor affiliates, is a leading public oil and gas company that focuses primarily on exploration, development, and production in

---

[5]  The "Voting Record Date" is the date as of which a holder of record of a claim or interest entitled to vote on the Plan must have held such claim to cast a vote to accept or reject the Plan.

the DJ Basin located in eastern Colorado. Headquartered in Denver, Colorado, the Debtors employ approximately 130 people. The Debtors' operating revenue for the twelve-month period ended December 31, 2020 was approximately $250 million and, as of Petition Date, the Debtors have approximately $779 million in total funded debt obligations. The Debtors commenced these chapter 11 cases to implement the merger with Bonanza Creek and the deleveraging transactions contemplated under the TSA, as further described in the First Day Declaration.

10. On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

**Jurisdiction and Venue**

11. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (the "Amended Standing Order"). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

12. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13. The bases for the relief requested herein are sections 105, 363, 341, 1125, 1126, and 1128 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 2002, 3017, 3018, 3020, and 9006, and Local Rules 3017-1 and 9006-1.

**The Notice and Solicitation Procedures**

**I. The Notice Procedures.**

14. Since commencing solicitation of the Plan, the Debtors and their advisors have been in near-constant contact with parties in interest in these chapter 11 cases. Specifically, the Debtors have provided notice to parties in interest, including parties entitled to vote, in the following ways: (a) serving and noticing the Combined Notice on approximately 5,000 interested parties, including all voting parties, creditors, insurers, and interested governmental parties (the "Notice Parties"); (b) posting the Plan, the Disclosure Statement, the Plan Supplement, and the various "first-day" pleadings on the Debtors' claims and noticing agent's, Epiq Corporate Restructuring, LLC, (the "Claims and Noticing Agent"),[6] website; and (c) publishing the Combined Notice in *The New York Times* (national edition) and *The Denver Post*.

15. Beginning on February 10, 2021, the Debtors caused their Claims and Noticing Agent to serve (or caused to be served) the Combined Notice, Plan, and Disclosure Statement on all Voting Classes and the Debtors' top thirty (30) unsecured creditors. The Plan and the Disclosure Statement were also made available at no charge to all members of the public on the public website maintained by the Claims and Noticing Agent on the same day. Additionally,

---

[6] The Debtors have also applied for authority to retain Epiq Corporate Restructuring LLC, as their claims and noticing agent. *See Debtors' Application for Appointment of Epiq Corporate Restructuring, LLC, as Claims and Noticing Agent*, filed contemporaneously herewith.

on February 10, 2021, the Claims and Noticing Agent served approximately 5,000 creditors and interested parties with the Combined Notice.

16.     On February 16, 2021, the Debtors published a copy of the Combined Notice in the *New York Times* (national edition) and the *Denver Post*, copies of which are attached to the Order as Exhibit 3 and Exhibit 4, respectively (together, the "Publication Notices").  The Debtors also made the Combined Notice available at no charge to all parties that received notice of the Plan solicitation on the case website maintained by the Claims and Noticing Agent at https://dm.epiq11.com/HighPoint.

17.     On March 2, 2021, the Debtors caused the Claims and Noticing Agent to serve a notice of the various "first day" pleadings to approximately 5,000 creditors and interested parties. The Debtors' first day pleadings were also made available at no charge to all members of the public on the public website maintained by the Claims and Noticing Agent on the same day.

18.     On March 4, 2021, the Debtors caused the Claims and Noticing Agent to commence serving notice of the Plan Supplement to approximately 5,000 creditors and interested parties.  The Plan Supplement was also made available at no charge to all members of the public on the public website maintained by the Claims and Noticing Agent on the same day.

19.     Below is an illustration of the Debtors' notice and service process:



## II.     The Solicitation Procedures.

20.     The Plan and the Disclosure Statement describe in detail the restructuring transactions contemplated by the Plan, the Merger Agreement, and the TSA and the recoveries provided to Holders of Claims against and Interests in the Debtors.   The following chart summarizes the classes of Claims and Interests, their status, and voting rights:

| Class | Claims and Interests | Status | Voting Rights |
| --- | --- | --- | --- |
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | RBL Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 4 | Notes Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Existing HPR Interests | Impaired | Entitled to Vote |
| Class 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

21.     The Debtors commenced solicitation of votes on the Plan from Holders of Claims and Interests in Class 4 and Class 8 prior to the Petition Date in accordance with the Solicitation Procedures, the Bankruptcy Code, and applicable nonbankruptcy law. More specifically, on February 10, 2021 (the "Solicitation Commencement Date"), the Debtors caused the Claim and Noticing Agent to distribute packages containing the Combined Notice, the Disclosure Statement (including all exhibits), the Plan, and ballots ("Ballots") to Holders of Claims and Interests in Classes 4 and 8 (each, a "Solicitation Package").

22.     The Solicitation Packages clearly disclosed the Debtors' expectation to: (a) commence these chapter 11 cases on or about March 16, 2021; (b) request that the Court approve the Solicitation Procedures as set forth in the Disclosure Statement, including approval of March 11, 2021, at 5:00 p.m., prevailing Eastern Time, as the Voting Deadline; (c) request that the Court set March 11, 2021, at 5:00 p.m., prevailing Eastern Time, as the Objection Deadline; and (d) request that the Court set the Combined Hearing on or about March 17, 2021, subject to the availability of this Court.  In addition, the Solicitation Package was made available at no charge to all parties that received notice of the Combined Hearing on the case website maintained prepetition by the Claims and Noticing Agent at: https://dm.epiq11.com/HighPoint.

23.     As of the Petition Date, 99 percent of the creditors and interest holders that submitted a ballot accepted the Plan.  See *Declaration of Jane Sullivan of Epiq Corporate Restructuring LLC, Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, ¶ 19, Ex. A.  No other Classes were entitled to vote on the Plan.  Importantly, only 0.62% of Holders of Notes Claims and 0.82% of Holders of Existing HPR Interests entitled to vote on the Plan have voted to reject the Plan.

24.     Holders of Claims and Interests that received the Solicitation Package were directed to follow the instructions contained in the Ballots (and described in the Disclosure Statement) to complete and submit their respective Ballots to cast a vote to accept or reject the Plan.  The Disclosure Statement and the Ballots expressly provided that each such Holder needed to submit its Ballot so that it is actually received by the Claims and Noticing Agent on or before the Voting Deadline to be counted.  Certain Holders were not provided a Solicitation Package because such Holders are unimpaired under, and conclusively presumed to accept, the Plan or do not receive or retain any property under, and are conclusively presumed to reject, the Plan under sections 1126(f) and 1126(g) of the Bankruptcy Code, respectively.

25.     In addition, the timeline used for the solicitation of Existing HPR Interests complied with applicable nonbankruptcy law, which requires that stockholders be given 20 days' notice of a stockholders' meeting to vote on a merger.  8 Del. Code Ann. § 251(c) (2009).

26.     The Debtors' procedures and standard assumptions for tabulating Ballots include:

**Votes Not Counted**

- any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim or the Interest;

- any Ballot that is not actually received by the Solicitation Agent by the Voting Deadline (unless the Debtors determine otherwise or as permitted by the Court); *provided, however,* that the Debtors shall tabulate votes to accept or reject the Plan on behalf of holders of Existing HPR Interests after such time and until the HPR special shareholder meeting to consider approval of the Merger and otherwise in accordance with applicable nonbankruptcy law;

- any unsigned Ballot;

- any Ballot that partially rejects and partially accepts the Plan;

- any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan;

- any Ballot superseded by a later, timely submitted valid Ballot;

- any improperly submitted Ballot (unless the Debtors determine otherwise or as permitted by the Court); and

- any Ballot cast by a person or entity that does not hold a Claim or Interest in a Class that is entitled to vote on the Plan.

**No Vote Splitting**
- Holders are required to vote all of their Claims or Interests within a particular Class either to accept or reject the Plan and are not permitted to split any votes.

**Basis for Relief**

**I.     Approval of the Form and Manner of the Notice.**

27.     Bankruptcy Rule 2002 requires at least 28-days' notice to all Holders of Claims of the time fixed for filing objections to the hearing on confirmation of a chapter 11 plan.  Fed. R. Bankr. P. 2002(b), (d).[7]  To that end, the Debtors request that the Court approve (a) the Combined Notice, in the form attached as Exhibit 1 to the Order, which was served on the Debtors' creditor matrix on February 10, 2021 and (b) the Notice of Commencement, in the form attached as Exhibit 2 to the Order, which will be served on the Debtors' creditor matrix promptly following the commencement of these chapter 11 cases.  In accordance with Bankruptcy Rules 2002 and 3017(d), the Combined Notice:    (a) provided notice of the commencement of these chapter 11 cases; (b) provided a brief summary of the Plan; (c) disclosed the date and time of the Combined Hearing, subject to Court availability; and (d) disclosed the date and time of the Objection Deadline and the procedures for objecting to the Disclosure Statement and the Plan.

28.     The Debtors served the Combined Notice upon all known creditors, all interest holders of record, and the Notice Parties simultaneously with the commencement of Solicitation of the Plan on February 10, providing parties at least 29 days' notice of the Objection Deadline and 36 days' notice of the Combined Hearing.  To provide another layer of notice to the parties in

---

[7]    Bankruptcy Rule 3017(a) and Local Rule 3017-1(a) contain a similar requirement with respect to the hearing on approval of a disclosure statement.  Here, the Debtors do not seek separate approval of the Disclosure Statement under section 1125(b) of the Bankruptcy Code.  Such approval is not required at the present time because the Disclosure Statement was transmitted prepetition.

interest in this case, on the same day, the Debtors also launched a website maintained for these chapter 11 cases at https://dm.epiq11.com/HighPoint, where copies of the Plan and Disclosure Statement and important dates and deadlines (including the Voting Record Date, the Voting Deadline, the Objection Deadline, and the Combined Hearing) were and remain available.

29.     Bankruptcy Rule 2002(l) also permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." The Debtors published the Publication Notice in the *The New York Times (national edition)* and *The Denver Post* on February 16, 2021, attached as Exhibit 3 and Exhibit 4, respectively, to the Order. The Debtors believe that the Publication Notice provides sufficient notice of the pending approval of the Disclosure Statement, the Combined Hearing, and the Objection Deadline to entities who will not otherwise receive notice by mail as provided herein and through the Solicitation Procedures.

**II.     Scheduling the Combined Hearing.**

30.     Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider the disclosure statement and any objections or modifications thereto." Local Rule 3017-1 provides that a hearing on a disclosure statement "shall be at least thirty-five (35) days following service of the disclosure statement." Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan."

31.     The Court may combine the hearing on the adequacy of the Disclosure Statement and the hearing to confirm the Plan. *See* 11 U.S.C. § 105(d)(2)(B)(vi) (authorizing the Court to combine a hearing on approval of a disclosure statement with the confirmation hearing). The Debtors submit that the Combined Hearing would promote judicial economy and the expedient reorganization of the Debtors. Courts in this district routinely permit combined hearings in other

prepackaged chapter 11 cases. *See e.g.*, *APC Automotive Techs. Intermediate Holdings, LLC* No. 20-11466 (CSS) (Bankr. D. Del. June. 4, 2020) (scheduling a combined hearing for the disclosure statement and plan); *In re Longview Power*, LLC, No. 20-10951 (BLS) (Bankr. D. Del. Apr. 15, 2020) (same); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Dec. 19, 2019) (same); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. July 22, 2019) (same). Therefore, the Debtors request that the Court consider both the adequacy of the Disclosure Statement and whether to confirm the Plan at the Combined Hearing, and schedule the Combined Hearing on March 18, 2021 (or as soon as possible thereafter).

32.     It is appropriate to set the Combined Hearing on March 18, 2021. *First*, the Debtors have requested that the Court schedule the Combined Hearing on a date that is more than 35 days after service of the Disclosure Statement, and the Debtors provided notice consistent with Bankruptcy Rules 2002 and 3017(a) and section 1128(a) of the Bankruptcy Code. *Second*, as described above, the Debtors commenced solicitation on February 10, 2021, and solicitation was in accordance with sections 1125(g) and 1126(b) of the Bankruptcy Code. The Disclosure Statement and other solicitation materials were distributed to each Holder of a Claim entitled to vote on the Plan. *Third*, the Plan is a consensual prepackaged plan and the Debtors have already received sufficient votes in favor of the Plan from the Holders of the Notes Claims and Existing HPR Interests consistent with section 1126(c) of the Bankruptcy Code. *Fourth*, a combined hearing on the Disclosure Statement and Plan will reduce the potential damage to the Debtors' business and limit administrative expenses that arise from the time spent in these chapter 11 cases.

III.    **Objection Deadline and Related Procedures.**

33.     Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to

16

consider . . . any objections or modifications" to the Disclosure Statement.  Local Rule 3017-1(a) provides that "[u]pon the filing of a disclosure statement, the proponent of the plan shall obtain hearing and objection dates from the Court," which "hearing date shall be at least thirty-five (35) days following service of the disclosure statement and the objection deadline shall be at least twenty-eight (28) days from service of the disclosure statement."  Similarly, Bankruptcy Rule 2002(b) provides that notice shall be given to "the debtor, the trustee, all creditors and indenture trustees [of] not less than 28 days . . . by mail of the time fixed for filing objections and the hearing to consider approval of a disclosure statement or, under § 1125(f), to make a final determination whether the plan provides adequate information so that a separate disclosure statement is not necessary."  Under Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."

34.     Beginning on February 10, 2021, 29 days before the Objection Deadline, the Debtors caused their Claims and Noticing Agent to serve the Combined Notice, Plan, and Disclosure Statement on the Voting Classes, interested governmental parties, and the Debtors' top thirty (30) Holders of General Unsecured Claims, and to serve the Combined Notice on approximately 5,000 creditors and interested parties.  The Combined Notice provided the date and time of the Combined Hearing and Objection Deadline, and also provided instructions on how an interested party may object to the Plan or Disclosure Statement.  The Combined Notice provided that any objections to the approval of the Disclosure Statement or confirmation of the Plan, if any, shall:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such

objections; and (e) served so as to be ***actually received*** no later than the Objection Deadline via one of the following methods specified in the Combined Notice:  (i) emailed to the Claims and Noticing Agent prior to the Objection Deadline at tabulation@epiqglobal.com; (ii) mailed to proposed co-counsel to the Debtors so as to be actually received no later than the Objection Deadline; or (iii) emailed to proposed co-counsel to the Debtors prior to the Objection Deadline at the email addresses provided in the Combined Notice.

35.     The Combined Notice further provided that any objections received by the Debtors (including via email) would be served by the Debtors on proposed co-counsel to the Debtors, counsel to the Consenting Noteholders, the Consenting Shareholders, and the U.S. Trustee and forwarded to the Court and the Debtors' top thirty (30) largest creditors listed on each of their bankruptcy petitions.  No objections were received by the Debtors.

36.     The Debtors respectfully submit that the Confirmation Schedule is reasonable and appropriate because it is in compliance with the applicable sections of the Bankruptcy Code and the Bankruptcy Rules.

37.     ***First***, the proposed Objection Deadline of March 11, 2021, is 29 days following the Solicitation Commencement Date and the service of the Combined Notice, which is in compliance with the time periods required by the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

38.     ***Second***, the Confirmation Schedule is intended to not only preserve but maximize value for the Debtors' creditors by reducing the administrative costs of a drawn out chapter 11 proceeding.   Given the consensual nature of these chapter 11 cases and the restructuring transactions proposed by the Plan, the Debtors believe permitting the Combined Hearing to take place, as proposed, on or about March 18, 2021, is essential to the success of the reorganization.

39.     ***Third***, the Debtors commenced solicitation on February 10, 2021 (36 days prior to the requested date for the Combined Hearing), in accordance with sections 1125(g) and 1126(b) of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  The Disclosure Statement and other solicitation materials were distributed to each Holder of a Claim or Interest entitled to vote on the Plan.  The Debtors also made the Combined Notice, Plan, Disclosure Statement, and Plan Supplement available to all parties who received notice of the Plan solicitation at no cost on the Claims and Noticing Agent's case website.

40.     ***Fourth***, the Plan enjoys the near unanimous support of the Voting Classes. Specifically, Holders of 99 percent of the Notes Claims and Holders of approximately 99 percent of Existing HPR Interests submitted a Ballot accepting the Plan.  In addition, Holders of General Unsecured Claims shall be paid in full under the Plan and are accordingly deemed to accept the Plan.

41.     In these cases, the Debtors have implemented noticing and solicitation procedures that are consistent with precedent in this Court, have provided more than sufficient notice of the chapter 11 cases, Plan, and Disclosure Statement, and have provided impaired parties more than sufficient time to vote on a Plan.  In addition to the service described above, the Debtors published a copy of the Combined Notice in each of the *New York Times* (national edition) and the *Denver Post* on February 16, 2021, 30 days prior to the proposed Combined Hearing date.  The Debtors also caused their Claims and Noticing Agent to serve the Combined Notice, Plan, and Disclosure Statement on the Voting Classes, interested governmental parties, and the top thirty (30) Holders of Class 5 General Unsecured Claims and to serve the Combined Notice on approximately 5,000 creditors and interested parties.  Additionally, the Debtors made the Combined Notice, Plan,

Disclosure Statement, Plan, and Plan Supplement available to all parties that received notice of the Plan solicitation at no cost on the Claims and Noticing Agent's case website.

42. Accordingly, the Debtors respectfully request that the Court approve March 11, 2021, at 5:00 p.m., prevailing Eastern Time, as the Objection Deadline as stated in the Combined Notice. The Debtors request that the Court ratify the Debtors' proposal to require that objections to the Disclosure Statement or confirmation of the Plan meet the factors set forth above.

**IV.    Approval of the Prepetition Solicitation Procedures.**

43. The Debtors distributed the Solicitation Packages and solicited votes to accept or reject the Plan prior to the Petition Date in accordance with sections 1125 and 1126 of the Bankruptcy Code. *See* 11 U.S.C. § 1125(g) (debtors may commence solicitation prior to filing chapter 11 petitions); 11 U.S.C. § 1126(b) (holders of claims or interests that accepted or rejected a plan before the commencement of a chapter 11 case are deemed to accept or reject the plan so long as the solicitation was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation, or if there is no such applicable nonbankruptcy law, provided adequate information). Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims or interests for the purpose of soliciting their votes to accept or reject a plan of reorganization. Bankruptcy Rule 3017(e) provides that "the court shall consider the procedures for transmitting the documents and information required by [Bankruptcy Rule 3017(d)] to beneficial holders of stock, bonds, debentures, notes, and other securities, determine the adequacy of the procedures, and enter any orders the court deems appropriate." As set forth herein, the Solicitation Procedures comply with the Bankruptcy Code and the Bankruptcy Rules, and the Debtors seek approval of the Solicitation Procedures, the Ballots, and the procedures used for tabulating votes to accept or reject the Plan.

44.     The Voting Deadline was set for March 11, 2021, at 5:00 p.m., prevailing Eastern Time.  However, with respect to votes of Holders of Existing HPR Interests, the Debtors continued to tabulate votes to accept or reject the Plan on behalf of such Holders after such time and until the HPR special shareholder meeting to consider approval of the Merger convened, in accordance with applicable nonbankruptcy law.  As of the Voting Deadline, approximately 90 percent of Holders of Notes Claims by number and 99 percent by amount had voted and 99 percent of Holders of Existing HPR Interests accepted the Plan.

45.     Indeed, similar procedures have been approved in other chapter 11 cases in this district.  *See, e.g.*, *APC Automotive Techs. Intermediate Holdings, LLC* No. 20-11466 (CSS) (Bankr. D. Del. June. 4, 2020) (approving prepackaged solicitation procedures); *In re Longview Power, LLC,* No. 20-10951 (BLS) (Bankr. D. Del. Apr. 5, 2020) (same); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Dec. 19, 2019) (same); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) (Bankr. D. Del. Dec.  3, 2019) (same); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. July 22, 2019) (same).

### A.     Voting Record Date.

46.     Bankruptcy Rule 3018(b) provides that, in a prepetition solicitation, the holders of record of the applicable claims or interests against a debtor entitled to receive ballots and related solicitation materials are to be determined "on the date specified in the solicitation." The Disclosure Statement and Ballots clearly identified February 1, 2021, as the date for determining which Holders of Claims or Interests were entitled to vote to accept or reject the Plan.

### B.     Plan Distribution and Voting Deadline.

47.     Bankruptcy Rule 3018(b) provides that prepetition acceptances and rejections of a plan are valid only if the plan was transmitted to substantially all the holders of claims and interests entitled to vote on the plan and the time for voting was not unreasonably short.  As mentioned

above, all Holders of Claims and Interests entitled to vote on the Plan were transmitted the Plan on February 10, 2021. As set forth above, the Voting Classes had a period of 29 calendar days to consider and return votes with respect to the Plan.

48. Additionally, the timeline used for the solicitation of Existing Interests complied with applicable nonbankruptcy law, which requires that stockholders be given 20 days' notice of a stockholders' meeting to vote on a merger. 8 Del. Code Ann. § 251(c) (2009). As set forth above, the Debtors tabulated votes of Holders of Existing HPR Interests to accept or reject the Plan actually received prior to the Voting Deadline, and for such Holders, the Debtors continued to tabulate votes until the HPR special shareholder meeting to consider approval of the Merger convened on March 12, 2021.

49. The Debtors respectfully submit that Holders of Claims and Interests had adequate time to consider the Plan and the Disclosure Statement and submit a Ballot before the applicable Voting Deadline. Indeed, this period of time is consistent with, or substantially longer than, the solicitation period in other prepackaged chapter 11 cases in this district. *See*, *e.g.*, *In re Longview Power, LLC,* No. 20-10951 (BLS) (Bankr. D. Del. Apr. 15, 2020) (approving procedures for solicitation that included an 18-day voting period); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. July 22, 2019) (approving procedures for solicitation that included a 11-day voting period); *In re EV Energy Partners, L.P.*, No. 18-10814 (CSS) (Bankr. D. Del. April 4, 2018) (approving procedures for solicitation that included a 16-day voting period); *See, e.g.*, *In re PES Holdings, LLC*, No. 18-10122 (KG) (Bankr. D. Del. Jan. 29, 2018) (approving procedures for solicitation that included a two-day voting period); *See, e.g.*, *In re Halcon Resources Corp., et al.*, No. 16-11724 (BLS) (Bankr. D. Del. Jul. 29, 2016) (approving 22-day prepetition voting period for noteholders and equity security holders).

50. The Merger and restructuring transactions proposed in the Plan are the product of hard-fought, arm's-length negotiations among the Debtors, the Consenting Stakeholders, and BCEI. Prior to the Solicitation Commencement Date, the Plan and the Disclosure Statement were subject to extensive review and comment by the Consenting Stakeholders. Following the Solicitation Commencement Date and up until the Petition Date, all stakeholders were given notice of and the opportunity to review the Plan and the Disclosure Statement.

51. The Debtors submit that Holders of Claims and Interests in Class 4 and Class 8 are sophisticated market participants and were able to review the Disclosure Statement, were able to review and vote on the Plan, and were able to respond with objections, if any, by the deadlines requested in this motion. As of the Voting Deadline, approximately 90 percent of Holders of Notes Claims by number and 99 percent by amount, and approximately 99 percent of Existing HPR Interests had voted in favor of the Plan. For these reasons, the Debtors believe that the solicitation period is sufficient and appropriate for Holders of Claims and Interests entitled to vote on the Plan to make an informed decision to accept or reject the Plan.

**C.     The Ballots.**

52. Bankruptcy Rule 3017(d) requires the Debtors to transmit a form of ballot, which substantially conforms to Official Form 314, only to "creditors and equity security holders entitled to vote on the plan." Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." As set forth herein, all Holders of Claims and Interests entitled to vote on the Plan were transmitted Ballots. The Ballots used in the Solicitation Packages are based on Official Form 314, and have been modified, as applicable, to address the particular circumstances of these chapter 11 cases to include certain information that the Debtors believe to be relevant and appropriate for Holders of Claims

and Interests entitled to vote to accept or reject the Plan, and to ensure compliance with applicable SEC proxy requirements.  The forms of Ballots used in the Solicitation Packages are attached to the Order as Exhibits 5, 6, 7, 8, and 9.

### D. Voting Tabulation.

53.     As described above, the Debtors are using standard tabulation procedures in tabulating votes for the Plan.  These procedures are consistent with section 1126(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a), and accord with applicable nonbankruptcy law. These tabulation procedures are also consistent with those previously used in cases in this district. *See, e.g.*, *APC Automotive Techs. Intermediate Holdings, LLC* No. 20-11466 (CSS) (Bankr. D. Del. June. 4, 2020) (approving vote tabulation procedures substantially similar to those utilized here); *In re Longview Power*, *LLC*, No. 20- 10951 (BLS) (Bankr. D. Del. Apr. 15, 2020) (same); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Dec. 19, 2019) (same); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. July 22, 2019) (same).

## V. Approval of the Disclosure Statement.

54.     At the Combined Hearing, the Debtors will request that the Court find that the Disclosure Statement contains "adequate information" as defined in section 1125(a) of the Bankruptcy Code.  *See* 11 U.S.C. § 1126(b)(2) (providing that, if no nonbankruptcy law governs the solicitation of holders of claims or interests prior to the debtors commencing chapter 11 cases, such solicitation must have been based on the debtors providing such holders "adequate information").  Additionally, the Debtors will request that the Court find that prepetition solicitation of votes of Holders of Existing HPR Interests complied with applicable federal or state securities laws and regulations (including the registration and disclosure requirements thereof),

and therefore in a manner compliant with applicable nonbankruptcy law.  *See* 11 U.S.C. §§ 1125(g), 1126(b)(1).

55.     The Debtors complied with applicable nonbankruptcy law for the following reasons:

- The exchange offers were conducted in accordance with Section 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act") and Regulation 14E under the Exchange Act.

- The securities in the exchange offers were registered with the SEC pursuant to a Registration Statement on Form S-4, and the SEC declared such Registration Statement effective.  The SEC conducted a limited review of the exchange offer Form S-4 for compliance with the tender offer rules.

- The solicitation of votes in connection with the shareholder meeting and votes on the Plan was conducted pursuant to a prospectus/proxy statement that formed a part of a Registration Statement on Form S-4 and was declared effective by the SEC.

- The solicitation of votes for such meetings was conducted in accordance with Regulation 14A of the Exchange Act for solicitation of proxies.

**A.     The Disclosure Statement Contains "Adequate Information".**

56.     The Disclosure Statement contains adequate information because it is extensive and comprehensive.  What constitutes "adequate information" is based on the facts and circumstances of each case, but the focus is on whether sufficient information is provided to enable parties to vote in an informed way, and that standard is easily met here.  *See* 11 U.S.C. § 1125(a)(1); *see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321–22 (3d Cir. 2003) (providing that a disclosure statement must contain "adequate information to enable a creditor to make an informed judgment about the Plan") (internal quotations omitted); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (noting that "adequate information" varies on a case-by-case basis).  For instance, the Disclosure Statement contains descriptions and summaries of, among other things:  (a) both the Plan and the Debtors' related reorganization efforts; (b) certain events and relevant negotiations preceding the commencement

25

of these chapter 11 cases; (c) the key terms of the Merger and restructuring transactions; (d) risk factors affecting consummation of the Plan and the Merger Agreement; (e) a liquidation analysis setting forth the estimated recovery that Holders of Claims and Interests would receive in a hypothetical chapter 7 case; (f) financial information that is relevant in determining whether to accept or reject the Plan; (g) an a valuation analysis setting forth the value of the combined BCEI and Reorganized Debtor entities, upon consummation of the Merger and the restructuring transactions contemplated by the Plan; (h) securities law consequences of the Plan; and (i) federal tax law consequences of the Plan.  In addition, and as noted above, the Disclosure Statement and the Plan were subject to extensive review and comment by the parties to the TSA, including the Consenting Noteholders and the Consenting Shareholders.  Accordingly, the Debtors submit that the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code and should be approved.

> **B.    Solicitation of Claim and Interest Holders Complied with Applicable Nonbankruptcy Law.**

57.    The Debtors' solicitation of Holders of Existing HPR Interests complied with the Securities and Exchange Act of 1934, 15 U.S.C. § 77a et seq. and Reg. 14A, 17 C.F.R. § 240.14a-1 et seq.  Additionally, because the Merger requires the registration of new securities—the newly issued BCEI Common Stock—on December 17, 2020, the Debtors and BCEI filed with the SEC registration statements, including a joint proxy statement/prospectus relating to the Merger, and  a prospectus relating to the Exchange Offer (as defined in the Merger Agreement) (the "Registration Statements").  The Registration Statements complied with the registration requirements of the Securities Act of 1933, including the significant disclosure requirements therein.  *See generally* 15 U.S.C. §§ 77g, 77aa, and related regulations.  On February 9, 2021, the SEC completed its review of the Registration Statements and indicated it did not have any further

comments.  The SEC declared the Registration Statements effective that same day.  *See In re Dex One Corp.* 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013) (approving procedures for solicitation that complied with applicable securities law where debtors registered materials with the Securities and Exchange Commission).[8]

## VI.   Waiver of Certain Solicitation Package Mailings.

58.   The Debtors request that the Court waive the requirement that they mail a copy of the Solicitation Package to Holders of Claims and Interests presumed to accept the Plan.  *See* Fed. R. Bankr. P. 3017(d) (requiring transmission of a court-approved disclosure statement to, *inter alia*, classes of unimpaired creditors and equity security holders unless the court orders otherwise).  Bankruptcy Rule 3017(d) applies, in relevant part, "[u]pon approval of a disclosure statement."  Accordingly, Bankruptcy Rule 3017 may be deemed not to apply here considering the prepetition solicitation process employed.  *See also* 11 U.S.C. § 1126(f)–(g) (providing that solicitation of parties either presumed to accept or deemed to reject is unnecessary).  Distributing the Solicitation Packages to non-voting creditors or equity holders is costly and administratively burdensome.  The Debtors submit that their resources should not be dissipated by having to satisfy this mailing requirement, especially given that the Debtors have made the Solicitation Package available at no cost on the case website maintained prepetition by the Claims and Noticing Agent at: https://dm.epiq11.com/HighPoint.

59.   Similar waivers have been granted in other chapter 11 cases in this district.  *See, e.g.*, *APC Automotive Techs. Intermediate Holdings, LLC* No. 20-11466 (CSS) (Bankr. D.

---

[8]   See also 7 Collier on Bankruptcy 111126.03[1] (16th ed. 2012) ("[I]f the debtor proposed a recapitalization plan prior to the commencement of a case and solicited the consents of its debenture holders or shareholders pursuant to a proxy statement that was filed with, and approved by, the Securities and Exchange Commission, those consents may be used after the commencement of the chapter 11 case, since the solicitation was conducted in accordance with applicable nonbankruptcy law, rules or regulations, namely the proxy rules of the Securities and Exchange Act of 1934.").

Del. June. 4, 2020) (providing that debtors shall mail a copy of the plan or the disclosure statement to claimants presumed to accept or deemed to reject the plan only upon request of such claimants); *In re Longview Power*, *LLC*, No. 20- 10951 (BLS) (Bankr. D. Del. Apr. 15, 2020) (same); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Dec. 19, 2019) (same); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. July 22, 2019) (same).

## VII.    Conditional Waiver of the Creditors' Meeting and the Filing of SOFAs and Schedules.

60.    The Debtors respectfully submit that the circumstances of these chapter 11 cases merit a conditional waiver of the requirements that (a) the U.S. Trustee convene a Creditors' Meeting, and (b) the Debtors file their Schedules and SOFAs, in both cases, if a Plan is confirmed within seventy-five (75) days of the Petition Date.  This relief is appropriate because the Plan already carries the unanimous support of the creditors and equity holders of the Voting Classes that submitted Ballots and will satisfy all General Unsecured Claims in full.

61.    Although section 341(a) of the Bankruptcy Code typically requires the U.S. Trustee to convene and preside over a meeting of the Debtors' creditors, that requirement can be waived under the circumstances present here.  Specifically, section 341(e) provides:

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

62.    As discussed above, the Debtors commenced solicitation of votes to accept or reject the Plan on February 10, 2021, prior to the Petition Date of March 14, 2021, thereby satisfying the threshold statutory requirement.  As of the Petition Date, the Debtors have already received overwhelming support from the creditors and equity holders entitled to vote on the Plan, and the

Plan leaves RBL Claims and General Unsecured Claim unimpaired.  Accordingly, the Debtors submit that the meeting of creditors contemplated by section 341 of the Bankruptcy Code need not be convened if the Debtors obtain confirmation of the Plan within seventy-five (75) days of the Petition Date.

63.     The Debtors also request that the requirement to file Schedules and SOFAs be waived in the event the Plan is confirmed within seventy-five (75) days of the Petition Date. Pursuant to Local Rule 1007-1(b), the Debtors are already entitled to a 30-day extension of the requirement to file their Schedules and SOFAs because the Debtors have more than 200 creditors. The Court has authority to grant a further extension "for cause" pursuant to Bankruptcy Rule 1007(c) and Local Rule 1007-l(b).  Here, cause exists to further extend the deadline because requiring the Debtors to file Schedules and SOFAs would distract the Debtors' management and advisors from the work of ensuring a smooth transition into and out of these chapter 11 cases through confirmation of the Plan and subsequent consummation of the Merger.  Given the prepackaged nature of these chapter 11 cases, the Schedules and SOFAs would also be of limited utility to most parties in interest—the Debtors have already received enough support to meet the voting requirements of section 1126(c) of the Bankruptcy Code and the Plan proposes to satisfy the RBL Claims and General Unsecured Claims in full.  The minimal benefit of requiring the Debtors to prepare the Schedules and SOFAs will be significantly outweighed by the substantial expenditure of time and resources the Debtors will be required to devote to the preparation and filing of these documents.  For these reasons, the Court should only require the Debtors to file Schedules and SOFAs if the Plan is not confirmed within seventy-five (75) days of the Petition Date.

64.     Courts in this district have frequently waived the requirements for the U.S. Trustee to convene a Creditors' Meeting and for a debtor to file Schedules and SOFAs in other prepackaged chapter 11 cases.  *See*, *e.g.*, *APC Automotive Techs. Intermediate Holdings, LLC* No. 20-11466 (CSS) (Bankr. D. Del. June. 4, 2020) (conditionally waiving the requirement to convene a Creditors' Meeting and file Schedules and SOFAs if the Plan confirmed in 75 days); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Dec. 19, 2019) (same); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. July 22, 2019) (same); *In re EV Energy Partners, L.P.*, No. 18-10814 (CSS) (Bankr. D. Del. Apr. 4, 2018) (granting a contingent 72-day extension to convene a Creditors' Meeting and file Schedules and SOFAs).  For the reasons discussed above, similar relief is appropriate in these chapter 11 cases as well.

65.     The Debtors ask that the requested relief be granted without prejudice to the Debtors' ability to seek further extension or modification of the requirements for the U.S. Trustee to convene a Creditors' Meeting and for the Debtors to file Schedules and SOFAs.  The Debtors also request that the Court authorize the Debtors to further extend the deadline to convene a Creditors' Meeting and file Schedules and SOFAs without filing a supplemental motion, and without further order from the Court, provided that the Debtors obtain the advance consent of the U.S. Trustee.

**<u>Notice</u>**

66.     Notice of the hearing on the relief requested in this motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Local Rules, and is sufficient under the circumstances.  Without limiting the foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties-in-

interest, including: (a) the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' prepetition RBL credit facility and/or counsel thereto; (d) the lenders under the Debtors' prepetition RBL credit facility and/or counsel thereto; (e) the indenture trustee for the Debtors' prepetition senior notes and/or counsel thereto; (f) the holders of the Debtors' prepetition senior notes and equity interests that are party to the Transaction Support Agreement and/or counsel thereto; (g) BCEI and/or counsel thereto; (h) the United States Attorney's Office for the District of Delaware; (i) the Internal Revenue Service; (j) the United States Securities and Exchange Commission; (k) the state attorneys general for states in which the Debtors conduct business; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

67.     No prior request for the relief sought in this motion has been made to this or any other court.

[*Remainder of page left intentionally blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this motion and granting such other and further relief as is appropriate under the circumstances.

Dated: March 14, 2021
Wilmington, Delaware

/s/ Domenic E. Pacitti

**KLEHR HARRISON HARVEY BRANZBURG LLP**
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:      (302) 426-1189
Facsimile:      (302) 426-9193
Email:          dpacitti@klehr.com

- and -

Morton R. Branzburg (*pro hac vice* pending)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:      (215) 569-3007
Facsimile:      (215) 568-6603
Email:          mbranzburg@klehr.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com

- and -

W. Benjamin Winger (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          benjamin.winger@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*